Jay H. Berg, Esq.
(jb5510)
Cornicello, Tendler, Baumel-Cornicello, LLP
Two Wall Street, 20th Floor
New York, NY 10005
T. 212-994-0260
F. 212-994-0268
*Counsel to Laura Langford*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In the Matter of the Arbitration Between     :
LAURA LANGFORD,     :  Docket No.  CV-20-4980
     :
     Petitioner,     :
     :
     -and-     :  **VERIFIED PETITION TO**
     :  **CONFIRM ARBITRATION**
DIANA BECK,     :  **AWARD**
     :
     Respondent.     :
     :
----------------------------------------------------------------X

     Petitioner Laura Langford ("Petitioner"), by her attorneys, Cornicello, Tendler &

Baumel-Cornicello, LLP, hereby alleges as follows:

THE PARTIES

     1.    Petitioner is a resident of the State of Nevada.

     2.    Upon information and belief, Respondent Diana Beck ("Respondent") is a

resident of the State of New York.

## JURISDICTIONAL STATEMENT

3.       This Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1332 (a)(1), in that there is complete diversity of citizenship between the parties and more than $75,000, exclusive of interest, is at stake in this controversy.

## VENUE

4.       Venue is proper in the United States District Court for the Southern District of New York, pursuant to 9 U.S. Code §9, in that the arbitration clause in the real estate agreement (the "Agreement") between the parties is silent as to the Court in which judgment on the Award of Arbitration (the "Award") shall be entered, and this is the United States Court in and for the judicial district in which the Award sought to be confirmed was made.   A true and correct copy of the Award is annexed hereto as Exhibit "A."

## TIMELINESS

5.       This petition is timely in that it is being filed within one year after delivery of the Award to Petitioner and Respondent.

## STATEMENT OF FACTS

6.       On the 26th day of May, 2005, Petitioner and Respondent entered into a written real estate agreement (defined above as the "Agreement") concerning, *inter alia*, the ownership of and necessary payments (the "Necessary Payments") for condominium unit 5D (the "Condominium Agreement"), in the building known as and located at 437 West 38th Street, New York, NY (the "Building"). A true and correct copy of the Agreement is annexed hereto as Exhibit "B."

2

7.     The Agreement, provided, in Paragraph "14" thereof, that "[a]ny controversy or claim arising out of or related to [the Agreement] , or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ["AAA"], and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof."

8.     Respondent subsequently breached the Agreement by failing to make the Necessary Payments for the monthly common charges and assessments for the Condominium Unit, as well as the quarterly real estate taxes for the Condominium Unit, in accordance with Paragraph "5(a)" of the Agreement.

9.     As a result of Respondent's failure to make the Necessary Payments for the monthly common charges and assessments for the Condominium Unit, and the quarterly real estate taxes for the Condominium Unit, Petitioner was compelled to make them.

10.    Accordingly, on March 14, 2019, Petitioner caused a notice of default (the "Notice of Default" to be served on Respondent, pursuant to Paragraph "7(e)" of the Agreement.

11.    The Notice of Default  advised Respondent that, in accordance "7(e)(iii) of the Agreement, unless Respondent reimbursed Petitioner for the Necessary Payments that Petitioner had made on Respondent's behalf within five days of the date of the Notice of Default, Respondent would have to vacate the Condominium Unit within sixty days of receipt of the Notice of Default.

12.     The Notice of Default further advised Respondent that, if she did not reimburse Petitioner for the Necessary Payments that Petitioner had made on Respondent's behalf within five days of the date of the Notice of Default, and did not vacate the Condominium Unit within sixty days of receipt of the Notice of Default, Petitioner  would file for binding arbitration, in accordance with Paragraph "14" of the Agreement.

13.     Respondent did not reimburse Petitioner for the Necessary Payments that Petitioner had made on Respondent's behalf.

14.     Nor did Respondent vacate the Condominium Unit within sixty days of receipt of the Notice of Default.

15.     Accordingly, on June 12, 2019, Petitioner served Respondent with a demand for arbitration (the "Demand for Arbitration").

16.     The Dollar Amount of the Claim in the Demand for Arbitration was $182,987.69.

17.     The Demand for Arbitration was filed with AAA on June 14, 2019.

18.     Upon information and belief, AAA, by letter dated June 25, 2019, and sent to Respondent by first-class mail and certified mail, advised Respondent that she had until July 9, 2019 to file an Answer to the Demand for Arbitration.

19.     Respondent did not file an Answer to the Demand for Arbitration.

20.     On August 2, 2019, Amy K. Eckman, Esq (the "Arbitrator") was appointed arbitrator of this controversy.

21.     On September 10, 2019, a Preliminary Management Telephonic Hearing (the "PMTH") was held.

22.     Participating in the PMTH was Julie M. Molly ("Molloy"), Manager for ADR Services for AAA; Jay H. Berg, Esq, counsel for Petitioner ("Petitioner's Counsel"); and the Arbitrator.

23.     Respondent did not participate in the PMTH.

24.     As a result of the PMTH, the Arbitrator entered a scheduling order (the "Scheduling Order").

25.     A copy of the Scheduling Order was emailed and mailed to Petitioner's Counsel by AAA.

26.     Upon information and belief, AAA mailed a copy of the Scheduling Order to Respondent, by first-class mail and certified mail.

27.     At the same time, AAA also emailed and mailed a notice of hearing (the "Notice of Hearing") to Petitioner's counsel.

28.     Upon information and belief, AAA also mailed a copy of the Notice of Hearing to Respondent by first-class mail and certified mail.

29.     The Notice of Hearing advised the parties that an evidentiary hearing (the "Evidentiary Hearing") would be held at the offices of Petitioner's attorneys on the 4th Day of December 2019.

30.     On September 24, 2019, Petitioner's Counsel, pursuant to the Scheduling Order, emailed a statement of claim ("the Statement of Claim") to AAA.

31.     Upon information and belief, AAA mailed a copy of the Statement of Claim to Respondent by first-class mail and certified mail.

32.     On November 20, 2019, Petitioner's Counsel, pursuant to the Scheduling Order, emailed AAA copies of all the documents that Petitioner intended to introduce at the Evidentiary Hearing.

33.     On November 24, 2019, Petitioner's Counsel mailed Respondent copies of all the documents that Petitioner intended to introduce at the Evidentiary Hearing, together with a cover letter reminding Respondent of the time and place of the Evidentiary Hearing. The documents and letter were mailed to Respondent by first-class mail.

34.     The Evidentiary Hearing was held, as scheduled, on December 4th, 2019, at the offices of Petitioner's Counsel

35.     Petitioner appeared via Skype, from Hamburg, Germany, where she was then working.

36.     Respondent did not appear.

37.     At the Evidentiary Hearing, Petitioner's Counsel submitted proof to the Arbitrator showing that Petitioner had paid all of the common charges and assessments for the Condominium Unit for fifteen consecutive months, commencing January 1, 2018 and ending March 31, 2019.

38.     In addition, Petitioner's Counsel submitted proof to the Arbitrator showing that Petitioner had paid all the real estate taxes for Condominium Unit for the seven quarters for the period commencing July 1, 2017 and ending January 1, 2019.

39.     Therefore,    a  post-hearing  scheduling  order  (the  "Post-Hearing Scheduling Order"), setting forth a briefing schedule, was entered by the Arbitrator on December 5, 2019.

40.     Upon information and belief, AAA mailed a copy of the Post-Hearing Scheduling Order to the Respondent, by first-class mail and certified mail.

41.     The  briefing  schedule  was  subsequently  enlarged,  at  Petitioner's Counsel's request, due to illness.

42.     Upon information and belief, Respondent was advised of Petitioner's Counsel's request for an enlargement by AAA but did not respond.

43.     Petitioner's post-hearing brief and supporting materials were emailed to AAA on December 24, 2019.

44.     A copy was also mailed to Respondent by first-class mail.

45.     Respondent was given until January 27, 2020, to file a response to Petitioner's submission.

46.      Respondent did not file a response to Petitioner's submission.

47.     On January 28, 2020, the Arbitrator issued a second post-hearing scheduling order (the "Second Post-Hearing Scheduling Order").

48.     Upon information and belief, a copy of the Second Post-Hearing Scheduling Order was mailed by AAA to Respondent, by first-class mail and certified mail.

49.     Petitioner complied with the Second Post-Hearing Scheduling Order.

50.     Respondent did not.

51.     On February 12, 2020, the Arbitrator ordered the Evidentiary Hearing closed.

52.     On February 27, 2020, the Arbitrator delivered her Award of Arbitration (previously defined as "the Award") to Petitioner and Respondent.

53.     The Arbitrator awarded Petitioner exclusive possession of the Condominium Unit.

54.     The Arbitrator also awarded Petitioner a lien against Respondent's ownership interest in the Condominium Unit in the amount of $35,619.94, for the unreimbursed Necessary Charges that Petitioner paid on Respondent's behalf.

55.     The Arbitrator also awarded Petitioner attorneys' fees and related costs in the amount of $31,288.85.

56.     The Arbitrator also awarded Petitioner $11,012.50 for the costs and fees of the Arbitration.

57.     The Arbitrator directed that Respondent pay Petitioner the attorneys' fees and related costs, and the costs and fees of the Arbitration within, thirty days of delivery of the award.

58.     Upon information and belief, AAA delivered the Award to Respondent on February 27, 2020, by first-class mail and certified mail.

59.     Petitioner's Counsel, also delivered a copy of the Award to Respondent, together with a cover letter, demanding that she surrender possession of the Condominium to Petitioner, and that she make payment to Petitioner for the attorneys' fees and related costs, and the costs and fees of the Arbitration, which were awarded to

Petitioner.   The Award and cover letter were delivered to Respondent by first-class mail.

60.      Respondent has failed to voluntary satisfy the award.

61.      A judgment and order on the Award are therefore necessary in order to permit Petitioner to enforce it.

PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that:

    A.  This Court enter an Order confirming the award, as authorized by the Agreement and 9 U.S. Code §9.

    B.  This Court enter a judgment that conforms to the award.

    C.  Petitioner be awarded her costs and disbursements for this proceeding, including reasonable attorneys' fees.

    D.  Petitioner have such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 23, 2020

                    CORNICELLO, TENDLER
                      & BAUMEL-CORNICELLO, LLP
                    *Attorneys for Petitioner*
                    Two Wall Street, 20th Floor
                    New York, New York 10005
                    T: (212) 994-0260
                    F: (212) 994-0268

              By: _____
                    Jay H. Berg, Esq.
                    (jb5510)

Z:\WP\120119-01 (Laura Langford)\Verifed Petition to Confirm 06.22.20.doc

<u>VERIFICTION</u>

STATE OF NEVADA      )
                               ) ss:
CLARK COUNTY      )

LAURA LANGFORD, being duly sworn, hereby deposes and says:

1. I am the petitioner in the foregoing matter.

2. I have read the Verified Petition to Confirm Arbitration Award and know the
   contents thereof; and the same is true to my own knowledge and belief; except as
   to those matters stated upon information and belief, and as to those matters, I
   believe them to be true.

Sworn to me on this
23Rd day of June , 2020

_____
LAURA LANGFORD

_____
NOTARY PUBLIC

KATHY RUIZ
Notary Public, State of Nevada
No. 20-7755-01
My Appt. Exp. Jan. 3, 2024

EXHIBIT A

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

In the Matter of the Arbitration between:

Case Number: 01-19-0001-8772

Laura Langford                                      (Claimant)

-vs-

Diana Beck                                          (Respondent)


**AWARD OF ARBITRATOR**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated May 26, 2005, and having been duly sworn, and having duly heard the proofs and allegations of Jay H. Berg, Esq. on behalf of Claimant, and the Respondent having failed to appear after due notice by US Mail and Certified Mail in accordance with the Rules of the American Arbitration Association, hereby AWARD as follows:


Facts

On or about May 26, 2005, Claimant and Respondent entered into an agreement (the "Agreement") regarding Condominium Unit 5D at 438 West 37th St, New York, NY 10018 (the "Property"). Respondent, who was the tenant of the Property and in possession thereof had been offered the opportunity to purchase it at a price below fair market value. Because Respondent wanted to remain in possession of the Property but did not have the funds to purchase it, she asked her friend, Claimant, to put up the money. Claimant agreed, paying the purchase price of $354,002.00, which she paid in full.

The parties took title to the Property as tenants in common. The Agreement provided that when the Property would be sold, Claimant would be reimbursed the $354,002.00 that she had paid to purchase it, and any profits above that (the "Proceeds") would be split between the parties, with Respondent receiving 75% of the Net Proceeds, and Claimant receiving 25%. It was further agreed that Respondent would be solely responsible for all common charges, assessments, and real estate taxes (collectively, the "Necessary Payments"), as well as homeowners' insurance and utility payments attributable to the Property. Section 7(c) of the Agreement provided that in the event Respondent failed for five months in any twelve month period to make any of the Necessary Payments or failed to repay Claimant for five or more Necessary Payments made on Respondent's behalf, then Respondent would be in default of the Agreement. In the event of default, Claimant would have a number of options, including one giving her exclusive possession of the Property for

the purpose of renting it out, provided Claimant gave Respondent written notice of default and five days to cure it.

Respondent failed to make certain of the Necessary Payments, thereby compelling Claimant to do so on her behalf. Despite requests for reimbursement, Respondent never did so. Therefore, on March 14, 2019, Claimant sent Respondent a Notice of Default, advising her that unless she reimbursed Claimant for the Necessary Payments within five days, she would need to vacate the Property within sixty days, in accordance with Paragraph 14 of the Agreement.

Respondent did not reimburse Claimant for the Necessary Payments, nor did she vacate the Property in the requisite timeframe. Accordingly, on June 12, 2019, Claimant initiated this arbitration. Paragraph 13 of the Agreement states: "If an Owner retains an attorney to institute an arbitration proceeding to enforce her rights under this Agreement, or to determine the meaning of a disputed term, she shall, if she prevails, be entitled to an award of arbitration fees, attorneys' fees and related expenses from the other Owner."

Procedural History

A telephonic preliminary hearing was held on September 10, 2019. Respondent did not participate despite being notified via certified mail by the AAA, which certified mail was returned as "refused, unclaimed." The preliminary hearing resulted in a scheduling order requiring Claimant to submit a detailed statement of claim no later than September 24, 2019, for both parties to submit all relevant documents and positions no later than November 15, 2019, and scheduling the evidentiary hearing for December 4, 2019 at the offices of Cornicello Tender & Baumel-Cornicello LLP, Two Wall St., 20th Floor, New York, NY 10005. The order also stated that Claimant was permitted to submit oral testimony via videoconference. The arbitrator also ordered counsel for Claimant to make every effort to contact Respondent and apprise her of the situation and make efforts to resolve this matter outside of the arbitration.

On September 13, 2019, Claimant's counsel submitted evidence that Claimant had retained an investigator to attempt to contact Respondent, and counsel personally left two voicemails for Respondent asking her to either call him or Claimant herself. The report of the investigator, Philip Segal of Charles Griffin Intelligence, dated September 12, 2019 stated that he left messages on Respondent's cell phone twice asking her to return the call, and then called five more times, during which the phone appeared to have been turned off. The investigator also interviewed Ruth Fredenthal, Respondent's neighbor in Apt. 5B, who confirmed that Respondent lives there. He also spoke with another neighbor, Warren Isensee in Apt. 5C who said he hadn't seen Respondent in "a couple of months."

On September 24, 2019, pursuant to the scheduling order, Claimant submitted its statement of claim. By November 15, 2019, also pursuant to the scheduling order, Claimant submitted its relevant documents, although Respondent did not submit anything.

01-19-0001-8772

2

On December 4, 2019, the evidentiary hearing was held at the location indicated in the scheduling order. Despite being notified via certified mail by the AAA and by Claimant's counsel, Respondent did not appear at the hearing. Claimant appeared via videoconference from her home in Hamburg, Germany, and testified that she made twelve payments on her credit card from January 1, 2018 to December 2, 2018 to Glass Farmhouse Condominium (the "Condominium") for common and capital assessments for the property in the amount of $9,216.19, for which she was not reimbursed. She further testified that she also made payments to the Condominium for January, February and March 2019 in the amount of $2,288.49 for which she had not been reimbursed.

Claimant also testified that she had paid real estate taxes for which she was not reimbursed, in the amount of $24,115.26, and submitted a printout from the NYC Department of Finance indicating such payments.

Claimant submitted a post-hearing brief on December 24, 2019 and Respondent was given until January 27, 2020 in which to respond. By January 27, 2020, despite having been sent notices of all this via certified mail, which notices were returned Refused and Unclaimed, Respondent did not respond.

Claimant's post hearing brief requested that Claimant be given exclusive possession of the Property, be granted a lien against Respondent's ownership interest in the property in the amount of $35,619.94, and also be granted arbitration fees, attorneys' fees and related costs in the amount of $34,181.94.

On January 29, 2020, the arbitrator requested the following additional information:

"As a post hearing order, I request that Claimant provide the backup to prove the request for $34,181.94 in 'arbitration fees, attorneys fees and related costs', including a statement of attorneys' billing rates and hours expended on this matter. Also, Claimant is requested to confirm why the request for the lien is in the amount of $34,619.94, as opposed to a much higher figure indicated in other submissions. I am assuming that this is because that is all that could be proved at this time, but please confirm.

Claimant is directed to provide this information no later than end of business February 4, 2020, and Respondent shall have until end of business February 11, 2020 in which to respond."

Claimant provided the requested backup documentation and information by 40 page submission dated February 4, 2020, which included the following:

$2,900.00 to the AAA for the initial filing fee

$9,900.00 to the AAA for the arbitration fee, which included $7,700.00 in arbitrator fee deposits and $2,200.00 for final AAA fees. It is noted that any unused portion of the arbitrator fee deposits would be refunded to Claimant.

$31,288.85 in attorneys' fees and costs (including investigator's fees, stenographer, etc.)

Although Respondent was given until February 11, 2020 in which to respond to Claimant's additional submission of

01-19-0001-8772

evidence, no such response was ever provided.

The hearing was thus closed on February 11, 2020.

Having reviewed all the foregoing proofs, I AWARD as follows:

1. Claimant shall have exclusive possession of the Property known as Condominium Unit 5D, 438 West 37th Street, New York, NY 10018.

2. Claimant shall have a lien against Respondent's ownership interest in the Property in the amount of $35,619.94 (thirty-five thousand six hundred nineteen dollars and ninety-four cents)) for unreimbursed common charges, assessments and real estate taxes that Claimant paid on Respondent's behalf for the period commencing January 1, 2018 and ending March 1, 2019. Said lien is without prejudice to Claimant's right to place other liens against the Property for any other unreimbursed payments for common charges, assessments and real estate taxes that Claimant had or may have to make on Respondent's behalf.

3. Respondent shall pay to Claimant the sum of attorneys' fees and related expenses in the amount of $31,288.85 (thirty-one thousand two hundred eighty-eight dollars and eighty-five cents).

The administrative fees of the American Arbitration Association totaling $5,100.00 and the compensation of the arbitrator totaling $5,912.50 shall be borne by Respondent. Therefore, Respondent shall reimburse Claimant the sum of $11,012.50, representing that portion of said fees in excess of the apportioned costs previously incurred and paid by Claimant.

The above sums are to be paid on or before thirty (30) days from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein, are hereby, denied. It is noted that Claimant retains the right, without prejudice, to place other liens against the Property for other unreimbursed payments for common charges, assessments and real estate taxes that Claimant had or may have to make on Respondent's behalf.

_2/27/20_
Date

_Amy K. Eckman_

I, Amy K. Eckman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_2/27/20_
Date

_Amy K. Eckman_

01-19-0001-8772

4

EXHIBIT B

## AGREEMENT

THIS AGREEMENT is entered into this 26th day of May, 2005, between LAURA S. LANGFORD [LANGFORD] residing at 40 West 76th Street, #2, New York, New York 10023 and DIANA BECK [BECK], residing at Unit 5D, 438 West 37th Street, New York, New York, each of whom is individually referred to in this agreement as "Owner" and both of whom are collectively referred to in this agreement as "Owners." The property is hereby identified as condominium unit 5D, at premises 438 West 37th Street, New York, New York.

WHEREAS, BECK is the tenant in possession of the Property and has been offered the sole opportunity and right to purchase said premises at a price below fair market value, but has no cash facility to do so; and

WHEREAS BECK needs to stay in possession of the premises as it remains her primary residence; and

WHEREAS LANGFORD, has the cash facility to advance the funds necessary to purchase the premises and has agreed to do so in exchange for a 25% percent return on her investment and does not need to take possession of the premises; and

WHEREAS the parties have agreed to enter into this transaction for their mutual benefit;

NOW THEREFORE, in consideration of the mutual covenants and representations set forth herein, the parties agree as follows:

1. The Property

Each of the Owners has acquired an interest as tenants in common in the condominium unit known as 5D, at premises 438 West 37th Street, New York, New York (referred to in this agreement as "the Property"). It is agreed between the parties that LANGFORD'S percentage interest in the premises is Twenty Five (25%) Percent of net proceeds [as defined herein] and BECK'S percentage interest in the premises is Seventy Five (75%) Percent of net proceeds [as defined herein]. The Condominium Association is named The Glass Farmhouse Condominium. The Owners' Closing took place on May 26, 2005.

2. Agreement

Each Owner intends to and shall own their respective interest in the property as a tenant in common with the other Owner. The Owners have agreed on terms for the proper and orderly management and operation of the Property during their co-ownership, and this Agreement embodies those terms.

3. Term

This Agreement shall be deemed to begin on the date hereof which is the date of the closing, and shall continue until either a. sale of the premises; b. terminated by a writing signed by both Owners with the attending documentation necessary for transfer of title; or c. the death of Diana Beck.

4. Contributions: Proceeds on Sale or Buy-out.

    a. The Purchase Price of the apartment was $ 350,000.  The Owners financed $0.

    b. LANGFORD has contributed the entire purchase price as well as closing costs of $ _354,002_ .

    c. BECK will be making the contributions for carrying costs, "necessary payments" (as defined in Section 5, below), repairs, and improvements are described in Sections 5, 8 and 9, below.

    d. Upon sale of the Property, the net proceeds shall equal the sum which remains after: a) payment of the $350,000 purchase price and closing costs advanced by LANGFORD, b) payment to the respective unit owner for proceeds attributable to improvements as provided in Section 9, below, and c) after deduction of closing costs, including broker's commissions.

    e. The net proceeds shall be divided between the Owners upon the sale of the property as follows: 25% to LANGFORD and 75% to BECK.


5. Necessary Payments

    a. BECK shall be responsible for the necessary payments due each month, shall pay same to LANGFORD, who will make the payments to the managing agent for condominium common charges and assessments and payment for Real Estate Taxes to the local municipality. On the date this Agreement is signed, and every month thereafter, the Owners shall establish the monthly payments due for necessary payments in accordance with this Section. That amount shall be recorded in writing as described in Section 6, below. BECK shall be solely responsible for the payment of common charges, real estate taxes, homeowners insurance and utilities attributable to the Property.

6. Records and Accountings

The Owners shall maintain a notebook (hereafter, "notebook"), in which they shall record any amounts paid by an Owner for necessary payments, repairs or improvements; the date each payment is made; and for what expense each payment is made. There shall be also recorded in the notebook information relative to agreements for repairs and/or improvements and payments for same, in accordance with Sections 8 and 9 below. Both Owners shall initial or sign her name next to each entry for necessary payments, repairs and/or improvements.

7. Failure to Make Payments, Default

a. In the event that an Owner fails to make her contribution to a necessary payment as provided in Section 5, above, the other Owner shall make such payment in her stead.

b. Any such contribution of a necessary payment shall be a no-interest loan to the nonpaying Owner, which loan constitutes a lien in favor of the paying Owner upon the ownership interest of the Owner whose necessary payment is thus made. See Section 8(d).

c. In the event that an Owner fails for five (5) months in any 12 month period to make the necessary payment which is her obligation under Section 5, above, or five (5) or more unpaid contributions paid pursuant to Subsection (a) above, accrue, the nonpaying Owner shall be in default. However, if the unpaid contributions derive solely from expenditures for repairs, Section 8(d) shall govern, and the non-paying Owner shall not be in default.

d. When an Owner is in default, the non-defaulting Owner, provided she complies with the requirements of Section 7(e), below, shall have the following options:

(i) to continue to make contributions (as provided in Section 7(a) and (b), above) on behalf of the defaulting Owner; and/or

(ii) to have exclusive possession of the Property and to rent out the defaulting Owner's 50% possessory interest on behalf of the defaulting Owner, or the whole on behalf of both Owners; or

(iii) to purchase the interest of the defaulting Owner for the price, and upon terms and conditions, as provided in Section 11(b)(iii)-(v), below; or

(iv) should the owner not in default be unwilling or unable to exercise her right to purchase, the right to sell the Property on behalf of both Owners.

e. None of the options provided in Section 7(d), above, may be exercised unless the non-defaulting Owner first serves upon the defaulting Owner a notice stating:

(i) that the other Owner is in default and the facts upon which such statement is based;

(ii) which option the non-defaulting Owner chooses to exercise; and

(iii) in the event the non-defaulting Owner chooses to exercise her option to rent out part or all of the Property pursuant to Section 7(d)(ii), she shall also provide written notice to the defaulting Owner that unless the defaulting Owner makes payment to the non-defaulting Owner of all accrued unpaid necessary payments within five (5) days, the defaulting Owner must vacate the Property within sixty (60) days of receipt of the notice.

f. In the event that the non-defaulting Owner chooses to rent out all or part of the Property pursuant to Section 7(d)(ii), she shall serve as rental and property management agent for both Owners.  She shall apply all rental proceeds first to making the defaulting Owner's contribution to current necessary payments, with any excess thereafter to be paid to the non-defaulting Owner to satisfy any outstanding sums due, and, after all such sums are satisfied, to be divided between the Owners.

8. Maintenance and Repairs

a. The Owners agree to make all extraordinary expenditures reasonably necessary to maintain the Property in good condition and prevent any deterioration thereto. Beck shall be responsible for making all ordinary repairs.

b. Except as otherwise agreed upon in writing, the owners shall contribute equally to payment for all agreed-upon repairs. Payments for such repairs shall be part of "necessary payments" as provided in Section 5, above.

c. Labor contributed by either Owner to repairs shall not be valued or reimbursed unless a written agreement signed by both Owners is entered into before the labor is performed.

d. If one Owner fails to make payments as required for the safety or protection of the Property, or agreed-to "necessary" repair payments, the other Owner may contribute such payments. Any such contribution shall be a no- interest loan and shall constitute a lien in favor of the Owner contributing such payments on the ownership interest of the Owner on whose behalf the payment is made.

9. Improvements

a. Neither Owner may initiate any improvement to the property reasonably estimated to cost $1,000 or more without obtaining the written agreement of the other Owner.

b. Any contribution by an Owner to an improvement in excess of one-half the cost of that improvement shall be recorded in the notebook. Such contribution constitutes an "excess contribution" for purposes of this Section.

c. In the event that an Owner makes an excess contribution to an improvement, then she is entitled upon a sale of the Property, or of the improvement, to reimbursement, dollar for

dollar, from the sales proceeds, except that an Owner shall not be entitled to any credit for an

excess contribution made in violation of Section 9(a) above.

No Owner seeking compensation for an improvement paid for or made by her in

whole or in part shall receive any compensation for said improvement unless she can provide

evidence of her contribution to the improvement.

10. Possession; Rental

a. BECK is the only owner with a 100% possession interest of the entire Property.

b. BECK shall not rent out her right to possession to any person or rent out any

portion of the property  without written approval from the other Owner of the proposed tenant(s).

11. Sale; Right of First Refusal

a. LANGFORD shall not have the right to sell or otherwise transfer her interest in

the Property for a period of ten (10) years.  Thereafter, neither owner has shall not sell or transfer

her interest in the property  unless she first offers to sell her interest to the other Owner in

accordance with this Section.

b. Any Owner who proposes to sell or transfer her interest (the "offeror Owner")

shall first deliver written notice of such intention, which shall also constitute an offer to sell, to the

other Owner (the "offeree Owner").  The notice must state:

(i) the nature and extent of the interest to be sold;

(ii) the sales price to the other Owner, which shall be

A. one half of the mean average of two appraisals of the property, which appraisals

shall be made by two licensed appraisers who are members of the American Institute of Real

Estate Appraisers, Society of Real Estate Appraisers, or New York State Society of Real Estate Appraisers, and who are familiar with the values of properties in the area where the Property is located, each Owner having procured and paid for one of the appraisals, and one of the appraisals shall be appended to the notice; (the Owner wishing to sell may procure both appraisals and require the other Owner to pay one-half the cost within 30 days if the other Owner does not procure the second appraisal within two weeks of receiving the written notice and the first appraisal) or

        B. any agreeable sales price, which may be less than one half said mean average;

  (iii) any adjustments to the sales price, pursuant to Section 4, above;

        c. The Owner to whom the notice is delivered shall have thirty (30) days from the date of delivery of the notice in which to notify the selling Owner, in writing, of her acceptance or rejection of the offer, or to make a counter-offer (regarding the price or to offer to sell her interest to the Owner originally desiring to sell). In the event the offeree Owner chooses to purchase the other's interest, she shall pay the down-payment, of at least 10% and execute a standard form with no contingencies contract of sale within thirty (30) days from the date of her written acceptance of the offer.

        d. In the event that the offeree Owner rejects the offer to purchase and makes no counter-offer, or the offeror Owner and the offeree Owner cannot agree on price, terms and conditions for sale within thirty (30) days of delivery of the initial offer by the Owner desiring to sell, the Owner desiring to sell, commencing on the date she moves out of the apartment, shall be temporarily relieved of all further obligations with respect to necessary payments, and the other Owner shall immediately place the apartment on the market and arrange to sell it to a bona fide third party unless the option under section 11(e) is utilized. The proceeds of the sale shall be

Estate Appraisers, Society of Real Estate Appraisers, or New York State Society of Real Estate Appraisers, and who are familiar with the values of properties in the area where the Property is located, each Owner having procured and paid for one of the appraisals, and one of the appraisals shall be appended to the notice; (the Owner wishing to sell may procure both appraisals and require the other Owner to pay one-half the cost within 30 days if the other Owner does not procure the second appraisal within two weeks of receiving the written notice and the first appraisal) or

        B. any agreeable sales price, which may be less than one half said mean average;

     (iii) any adjustments to the sales price, pursuant to Section 4, above;

        c. The Owner to whom the notice is delivered shall have thirty (30) days from the date of delivery of the notice in which to notify the selling Owner, in writing, of her acceptance or rejection of the offer, or to make a counter-offer (regarding the price or to offer to sell her interest to the Owner originally desiring to sell). In the event the offeree Owner chooses to purchase the other's interest, she shall pay the down-payment, of at least 10% and execute a standard form with no contingencies contract of sale within thirty (30) days from the date of her written acceptance of the offer.

        d. In the event that the offeree Owner rejects the offer to purchase and makes no counter-offer, or the offeror Owner and the offeree Owner cannot agree on price, terms and conditions for sale within thirty (30) days of delivery of the initial offer by the Owner desiring to sell, the Owner desiring to sell, commencing on the date she moves out of the apartment, shall be temporarily relieved of all further obligations with respect to necessary payments, and the other Owner shall immediately place the apartment on the market and arrange to sell it to a bona fide third party unless the option under section 11(e) is utilized. The proceeds of the sale shall be

distributed between the Owners as provided in Section 4, but there shall be an adjustment in favor of the Owner who assumed the obligation for necessary payments pursuant to this Section, of the excess 50% of necessary payments paid on behalf of the Owner who moved out, for a maximum of six months of said necessary payments.  After six months, the owner remaining in the apartment shall pay all necessary payments and shall not be entitled to reimbursement and shall be entitled to the entire amount of tax deductions allocable to these payments.

12. Right to Have Property Divided

   a. There shall be no right to have the Property Divided.

13. Legal Representation

   a. The Owners have each obtained counsel of their choosing to represent them in this matter.  BECK is represented by Phyllis Marie Kamysek, Esq. and LANGFORD is represented by Douglas A. Lobel, Esq.,  to advise them severally about the preparation of this agreement, and to prepare this written contract for their signature.

14. Disputes: Binding Arbitration

   Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

15. Attorneys' Fees

15. Attorneys' Fees

       If an Owner retains an attorney to institute an arbitration proceeding to enforce her

rights under this Agreement, or to determine the meaning of a disputed term, she shall, if she

prevails, be entitled to an award of arbitration fees, attorney's fees and related expenses from the

other Owner.

16. Governing Law

       The validity, interpretation, and effect of this Agreement shall be governed by the

law of the State of New York.

17. Severability

       Should one or more of the provisions of this Agreement be determined to be

invalid, the remaining provisions shall remain in full force and effect.

18. Amendments

       This Agreement may be altered or amended only by written agreement signed by

both Owners.

19. Whole Agreement

       This document contains the entire agreement of the parties.  No terms have been

wholly or partially omitted, and neither party has entered this Agreement in reliance on any term or

representation not stated herein.

IN WITNESS WHEREOF, the Parties have signed this Agreement on the day and year set forth next to their signatures.

DATED:      May 26, 2005

_____
LAURA S. LANGFORD

_____
DIANA BECK

## UNIFORM CERTIFICATE OF ACKNOWLEDGMENT
### (Within New York State)

State of New York      )
County of New York  ) ss.:

On the 26th day of May in the year 2005 before me, the undersigned, personally appeared DIANA BECK and LAURA S. LANGFORD personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

PHYLLIS MARIE KAMYSEK
Notary Public, State of New York
No. 31-4818645
Qualified in New York County
Commission Expires January 31, 2007